**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Steven Charles BELDEN, Defendant–Appellant.**

**No. 91–30022.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1991.

Submission Withdrawn Dec. 18, 1991.

Resubmitted Dec. 23, 1991.

Decided Feb. 20, 1992.

Richard D. Senders, Rose & Senders, Portland, Or., for defendant-appellant.

Johnathan S. Haub, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before TANG, O'SCANNLAIN and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Steven ·Charles Belden appeals his sentence for manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) on the grounds that the police mishandled confiscated marijuana plants so as to prevent an accurate re-count of the plants; the district court erred in counting plants that were not to be harvested when computing his offense level; the Guideline under which he was sentenced, which equated one marijuana plant to one kilogram of marijuana, violated the Due Process Clause of the Fifth Amendment; the district court clearly erred in failing to grant him an offense level reduction for minor participant status; and the court erroneously determined that it had no authority to depart downward. We affirm.

I

Belden argues that the district court erred in finding that more than 1000 marijuana plants were seized, and thus that his offense level under the Sentencing Guidelines was thirty-two. He first contends that, because the government destroyed the plants it seized but used evidence of the number of plants in its case-in-chief, the government violated his right of access to evidence under the Due Process Clause of the Fifth Amendment. He also argues that, even if there were no constitutional violation, evidence of the number of plants should be excluded as a sanction.

Police officers' failure to preserve all of the confiscated marijuana plants intact so as to enable an independent count did not infringe Belden's constitutional right of access to evidence. When potentially exculpatory evidence has not been preserved, the defendant must show "bad faith on the part of the police" to establish infringement of the right of access. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

Here, law enforcement officials counted the plants in the grow operation twice, once to obtain a separate search warrant and another time to collect information for the Western States Information Network. One count was 1100 to 1200 plants, and the other count was 1165 plants. Officers removed the plants from pots by either pulling them out or by cutting them above the roots. Cutting the plants above the roots

was routine police practice. Officers testified that they did not attempt to preserve the root systems because there was not enough space to store the complete plants. While placing the plants in burlap bags for storage, Deputy Roberts sometimes broke off the tops of the plants so they would fit in the bags.

These circumstances do not indicate bad faith on the part of the police, and thus the district court did not err in declining to exclude the evidence based on a violation of due process. *See id.; United States v. Sherlock*, 865 F.2d 1069, 1075 (9th Cir. 1989).[1]

 The district court also did not err in concluding that the quality of the government's conduct and the degree of prejudice to Belden did not warrant exclusion. Factors to be considered when determining if exclusion is an appropriate sanction for destroying or failing to preserve evidence are the "quality of the Government's conduct and the degree of prejudice to the accused." *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir.1979) (en banc), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). Also relevant are the "nature and degree of federal participation" and "whether the government attorneys prosecuting the case have participated in the events leading to loss or destruction of the evidence." *Id.* Whether to employ this judicially created remedy is in the district court's discretion. *United States v. Roberts*, 779 F.2d 565, 568–69 (9th Cir.), *cert. denied*, 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986).

Cutting the plants at the stems rather than preserving the roots was standard practice. The decision to cut off the tops of the plants to fit them into bags was in response to storage concerns. Belden was not unduly prejudiced because the plants were still available for another count, albeit an imperfect one, because he had access to a videotaped walk-through of the grow, and because he had an opportunity to cross-examine the officers who made the two initial counts. Finally, state rather than federal authorities conducted the plant collection and storage, *see Loud Hawk*, 628 F.2d at 1152, and federal prosecutors appear not to have participated in that process, *see id.* Under these circumstances, the district court did not abuse its discretion in declining to exclude the police plant counts. *See Roberts*, 779 F.2d at 568–69.

## II

 Belden next contends that he should have been sentenced based on the 680 plants that actually would have been harvested from the amount confiscated rather than on the basis of the number of plants taken from the grow. He points to U.S.S.G. §§ 2D1.1, comment. (n.12) and 2D1.4, comment. (n.2), which provide that where "the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.4, comment. (n.2). Belden, however, did not make this argument to the district court, either as an objection to the presentence report or elsewhere. Accordingly, the argument was not preserved for appellate

1. Belden argues that the bad faith requirement should not apply because the government used the number of plants in its case-in-chief and the exculpatory value of the evidence was apparent at the time the plants were seized. He relies on *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), in which the government used the defendant's alcohol breath test results in its case-in-chief but had not preserved the breath samples themselves. *Id.* at 481–83, 104 S.Ct. at 2530–31. There, the Court, in determining whether due process was violated, inquired whether the exculpatory value of the evidence was "apparent before the evidence was destroyed, and ... of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534. We need not resolve whether this test should apply instead of the *Youngblood* bad faith test, because there is no indication that the exculpatory value of the plants was apparent at the time of their confiscation. The two police counts were for purposes other than prosecution (for use in obtaining a separate search warrant and as statistics for the Western States Information Network), and there is no evidence that the officials making the counts were aware that they were destroying evidence by saving plants but breaking off the tops and not preserving roots.

review.[2]

## III

█ Belden next argues that the part of U.S.S.G. § 2D1.1 that equates one marijuana plant to one kilogram of marijuana has no rational basis and thus violates the Due Process Clause of the Fifth Amendment.

Section 2D1.1 states:

In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

The equations accommodate 21 U.S.C. § 841(b)(1)(D), which authorizes more than five years imprisonment for possession of greater than fifty marijuana plants, and 21 U.S.C. §§ 841(b)(1)(A)(vii) and (b)(1)(B)(vii), which require minimum prison terms for possession of 1000 plants and 100 plants respectively. Belden's offense involved well over fifty plants, so the district court properly computed Belden's sentence using the relationship of one plant to one kilogram of marijuana.

Belden argues that the plant-kilogram equation is irrational because it is an incorrect approximation of marijuana produced per plant and leads to an overly severe penalty. Belden notes that the government presented no evidence that one marijuana plant could possibly produce as much as one kilogram of marijuana. Belden also points to evidence in his own case to the effect that, in the grow operation, mature plants produced about 56 grams of marijuana, nowhere near one kilogram.

The Seventh Circuit rejected a similar challenge to § 2D1.1 in *United States v. Webb,* 945 F.2d 967 (7th Cir.1991). Webb claimed that § 2D1.1 has no rational basis, first, because there is no reason the fiftieth marijuana plant in a grow would increase the weight per plant tenfold, as § 2D1.1 appears to suggest, and, second, because it is "nonsensical" to treat a single marijuana plant as being able to produce a kilogram of "smokeable" marijuana. *Id.* at 968. He presented scientific evidence that marijuana plants are incapable of producing such high yields. *Id.* The Seventh Circuit held that the plant-kilogram equation has a rational basis because it recognizes heightened culpability of marijuana growers as compared with mere possessors of the harvested product:

Webb correctly argues that there is no correlation between a fiftieth plant and a ten-fold increase in weight or yield. There is no correlation to weight or yield because that was not the basis of Congress' sentencing scheme.... Understanding Congress' desire to punish whom it considered "major drug traffickers," we have declared previously that "judgments concerning what conduct should be made criminal and how heavily it should be punished are for Congress rather than the courts to make."

... In the instant case, the Guidelines merely reflect Congress' decision to use the fiftieth plant as an indicator of culpability and participation in the drug marketplace.

*Id.* at 968–69 (quoting *United States v. Rose,* 881 F.2d 386, 389 (7th Cir.1989)).[3]

---

**2.** Also, Belden's reliance on *United States v. Corley,* 909 F.2d 359 (9th Cir.1990), to suggest that we should disregard small plants that were not to be harvested, is misplaced. The district court in that case disregarded "shake" leaves, but we had no occasion to consider on appeal whether this was required. *Id.* at 360.

**3.** Two other courts have been faced with rational basis challenges to the plant-kilogram equation in § 2D1.1 and reached opposite results. *Compare United States v. Lewis,* 762 F.Supp. 1314 (E.D.Tenn.1991) (finding rational basis

based on evidence that, counting seeds, stalks, and limbs, one marijuana plant could produce one kilogram of material usable in marijuana trafficking, and alternatively based on the heightened culpability of growers) *with United States v. Osburn,* 756 F.Supp. 571 (N.D.Ga.1991) (finding no rational basis because of evidence that it is highly unlikely that one marijuana plant could produce one kilogram of marijuana). The Eighth Circuit, in *United States v. Streeter,* 907 F.2d 781, 789–91 (8th Cir.1990), struck § 2D1.1's equation of one plant to 100 grams—the equation for less than 50 plants—on

The Seventh Circuit's analysis is persuasive. Section 2D1.1's treatment of marijuana plants does not purport accurately to translate the amount of marijuana harvestable from a given plant. Rather, the section's rationality lies in its recognition of a higher level of culpability for marijuana growers compared to those who merely possess the harvested product. Marijuana growers operate at the top of the distribution chain, and are thought an important target for purposes of deterrence. Moreover, it is not irrational to assume that the number of plants seized in large grows, which are likely to be ongoing operations, probably represents less than the number of plants actually harvested.

We therefore hold that arriving at an offense level by equating one marijuana plant to one kilogram of marijuana has a rational basis and withstands due process challenge.

## IV

Belden argues that the district court clearly erred in failing to grant him a two-level reduction in offense level based on minor participation. U.S.S.G. § 3B1.2(b) provides a two-level reduction if the defendant was a minor participant. The commentary describes a "minor participant" as one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n. 3). The background to § 3B1.2 states that the offense level reduction is meant to be available to defendants who are "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (backg'd.).

Belden argues that he "was not involved with the cultivation of the marijuana or its harvesting, record keeping, or distribution," and that his only participation in the operation was "the installation and maintenance of a generator." Accepting these claims as true, the district court found that Belden's

> role was significant and important. It may not have gone directly to watering the plants or cultivating them, [but] with-

out functioning in that role the operation would not have succeeded. And of course the record reflects that the profits were to be equally shared.

This was not clearly erroneous. *See United States v. Howard,* 894 F.2d 1085, 1087–88 (9th Cir.1990).

## V

Last, Belden argues that the district court mistakenly believed that it had no authority to depart downwards from the Guidelines and that the court's mistaken belief should be grounds for resentencing. Although a district court's decision not to depart normally is not reviewable, *United States v. Morales,* 898 F.2d 99, 102 (9th Cir.1990), we will review de novo a district court's legal determination that the Guidelines prevent departure if the court indicates it would otherwise have departed. *See* 18 U.S.C. § 3742(e)(2) (review of "incorrect application of the sentencing guidelines"); *cf. United States v. Williams,* 898 F.2d 1400, 1403 (9th Cir.1990) (declining to review district court's determination that it had no authority to depart when court indicated it would not depart even if it had authority to do so).

In this case, the district court judge stated at the sentencing hearing that he was "not inclined to depart" and that, even though the sentence was harsh and he sympathized with Belden, there was no basis for departure. Because the court's decision not to depart did not appear to rest on the judge's belief that departure was prevented as a matter of law, we decline to review the decision. *See id.* For this reason, we need not decide whether a departure on any of the grounds asserted, including the contention that Belden suffered from diminished capacity, would have been warranted.

AFFIRMED.

the ground that it conflicted with the court's

interpretation of 21 U.S.C. § 841(b)(1)(D).