48 F.3d 1218
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jimmy PHILLIPS, Defendant-Appellant.
 No. 94-5140.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1994.
Decided Feb. 27, 1995.
 
 ARGUED: Bruce Alfred Byrholdt, Chapman, King & Byrholdt, Anderson, SC, for appellant. Mark C. Moore, Asst. U.S. Atty., Columbia, SC, for appellee. ON BRIEF: J. Barry Abston, Chapman, King & Byrholdt, Anderson, SC, for appellant. J. Preston Strom, Jr., U.S. Atty., Columbia, SC, for appellee.
 Before MOTZ, Circuit Judge, MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation, and MESSITTE, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 A jury found Appellant Jimmy Phillips guilty of perjury and conspiracy to manufacture and distribute marijuana on August 26, 1993, after a three-day trial. On appeal, Phillips argues that the district court erred in allowing the prosecution to cross-examine him about statements he allegedly made relating to his efforts to intimidate witnesses, including statements relating to a murder-for-hire scheme, and by allowing the admission of extrinsic evidence to prove Phillips's involvement in witness intimidation. He further argues that the court erred in permitting the government to call a witness not on the witness list provided to the defense before trial. Finally, Phillips argues that the court erred in counting ungerminated marijuana seeds as plants in computing the amount of marijuana attributable to Phillips under the Federal Sentencing Guidelines. Finding no error, we affirm.
 
 I.
 
 2
 The evidence at trial established that Phillips, a life-long resident of Lake City, South Carolina, who was a farmer, former state magistrate, former highway commissioner, and respected member of the Lake City community, entered a marijuana venture with James Turbeville in the spring of 1987. Turbeville and an associate, Veingro Hutchinson, planted approximately 900 marijuana plants on Phillips's property in the White Oak community. Turbeville and Phillips planned to harvest the marijuana, sell it, and split the profits. The crop, however, was destroyed by the South Carolina Wildlife Department.
 
 
 3
 In 1988, Phillips and Turbeville again planted marijuana on Phillips's White Oak property. This time, Phillips decided that the 500-plant crop needed protection from local law enforcement, and to this end approached Chief Deputy Wayne Lambert of the Williamsburg County, South Carolina Sheriff's Department. Lambert agreed to assist Phillips and the crop grew to maturity. Turbeville and his two sons, along with Phillips's son, harvested the crop and placed the approximately 100 pounds of marijuana in a warehouse on Phillips's property.
 
 
 4
 Phillips approached Richard Neil Dennis and others to sell the marijuana. During these transactions, Phillips proposed to Dennis that Dennis plant marijuana on Phillips's property and that they split the profits. Shortly thereafter, Dennis and his father-in-law, Lamont Wheeler, planted two to three hundred "hills" of marijuana on Phillips's property, the objective being that one marijuana plant would germinate on each hill. This marijuana never germinated. The marijuana either died or someone destroyed the crop.
 
 
 5
 In 1990 the Organized Crime and Drug Enforcement Task Force ("OCDETF" or "Task Force"), investigating organized drug trafficking and public corruption in the Williamsburg County area, arrested James Turbeville and Veingro Hutchinson. The Task Force then focused in on Wayne Lambert. The grand jury investigating Lambert subpoenaed Phillips and asked Phillips about his involvement with Lambert. Phillips testified before the grand jury on two occasions. The evidence at trial established that at his first appearance Phillips falsely denied making payoffs to Lambert for protection, and that at his second appearance he gave false answers to a number of questions about his involvement with Dennis and Lambert. The grand jury returned a federal racketeering indictment against Lambert and his son. Several months later, Phillips was arrested and subsequently indicted for conspiracy to manufacture and distribute marijuana and for giving false statements before a grand jury.
 
 
 6
 Before Phillips's trial, the government notified the defense that the identities and statements of all witnesses would be provided pursuant to the government's "open file policy." The government then provided the defense with this information. Furthermore, the government notified the defense that if Phillips testified the government would cross-examine him about "specific instances of his conduct which adversely reflect on his character for truth and veracity." (Supp. J.A. 12.) The government stated that it did not intend to question Phillips as to "evidence the government possesses concerning uncharged criminal conduct that the government does not plan to offer in its case in chief." (J.A. 11.) Moreover, the government notified the defense that it would introduce a pertinent trait of bad character in its rebuttal in response to any character witnesses called by the defense or any direct testimony by Phillips.
 
 
 7
 At the first day of trial, after James Turbeville had testified, his two sons approached the prosecution and said that they had information about Phillips, that they had helped their father harvest marijuana, and that they would be willing to testify against Phillips in cooperation with the government. The government informed the court of this development on the following morning. The court allowed the two sons to testify after the defense had an opportunity to interview them.
 
 
 8
 During the defense's case, numerous witnesses testified about Phillips's good character. Phillips testified that he had no involvement in the marijuana business and was adamantly against the use of drugs. On cross-examination, the government inquired about Phillips's involvement in witness intimidation, including an alleged offer of $10,000 he made to a migrant worker to kill Wayne Lambert. Also, in rebuttal, the prosecution introduced the testimony of Veingro Hutchinson, who stated that during the period between Phillips's two grand jury appearances, Phillips said "I hear your buddy, James [Hutchinson], is singing like a bird.... He ought to be careful how he's talking. There's some people over there liable to kill him." (J.A. 112.) According to Hutchinson Phillips went on to state, "one word from me, the job would be done." (J.A. 112.) Phillips then told Hutchinson that someone ought to warn Turbeville to keep quiet. The defense did not object to Hutchinson's testimony.
 
 
 9
 After the jury convicted Phillips on all counts, the case proceeded to sentencing. As part of the total drug weight attributed to Phillips, the district court attributed 200 kilograms of marijuana based on the 200 to 300 "hills" of marijuana planted by Dennis and his father-in-law on Phillips's property. Phillips challenged the attribution of these plants to him because they never germinated, and thus never achieved any root formation. The district court found that the plants were attributable to Phillips because the plants were a reasonably foreseeable part of the operations of the conspiracy and because, although they never grew, in controlled substance offenses an attempt is assigned the same offense level as the object of the attempt. This appeal ensued.
 
 II.
 A.
 
 10
 The court first addresses Phillips's argument that the district court erred in permitting the government to cross-examine him concerning his alleged threats against Turbeville and the $10,000 he allegedly offered to a migrant worker to kill Lambert. Reviewing for abuse of discretion, United States v. Ham, 998 F.2d 1247 (4th Cir.1993), we find none.
 
 
 11
 In applying Fed.R.Evid. 403, 608(b) and 611(b) the district court has considerable discretion to determine the proper scope of cross-examination, after weighing such factors as "the importance of the testimony to the government's case, the relevance of the conduct to the witness's truthfulness, and the danger of prejudice, confusion, or delay raised by the evidence sought to be adduced." United States v. Leake, 642 F.2d 715, 719 (4th Cir.1981). As we have stated, "[i]t is a well settled rule that a defendant who voluntarily offers himself as a witness and testifies in his own behalf subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility." United States v. Ling, 581 F.2d 1118, 1120-21 (4th Cir.1978).
 
 
 12
 The government questioned Phillips about witness intimidation only after numerous defense witnesses testified that Phillips was a well-respected and law-abiding member of the Lake City community, after Phillips testified extensively that he had never been associated with drugs and was adamantly against drug use, and that he was unaware of the criminal activity of his co-conspirators. The alleged incidents of witness intimidation were certainly probative of truthfulness and pertinent under Rule 608(b) since the threats against Hutchinson and the murder-for-hire scheme relating to Lambert involved efforts by Phillips to forcibly silence witnesses assisting the government's case against him.
 
 
 13
 The subject of witness intimidation was not only probative of Phillips's credibility under Rule 608(b), but was also within the scope of Phillips's direct examination, and thus admissible under Rule 611(b) as related "to the subject matter of the direct examination." Phillips testified on direct that he refused to participate in a far-fetched scheme purportedly hatched by Turbeville after Turbeville had been arrested, to set up Lambert for arrest so that Turbeville would be released. (J.A. 75-76.) Phillips denied participating with Turbeville, Lambert, or any of the other government witnesses, in a drug conspiracy. (J.A. 69-90.) He denied offering Lambert bribe money. (J.A. 80.) Throughout his testimony Phillips characterized himself as a "good old boy" offering sage advice to his wayward friends, to the extent of testifying that he told Brian Tomlinson to forego the drug business and work hard to make honest money, and that he tried to give Tomlinson the type of advice that "the preacher would have told him." (J.A. 85-86.)
 
 
 14
 The government's cross-examination related to each of Phillips's specific denials, since the allegations raised by the government directly conflicted with Phillips's statements that he was unaware of the criminal activity of the witnesses against him. Also, the allegations of witness intimidation sharply conflicted with the wholesome image that Phillips sought to construct for himself in his direct testimony and through his character witnesses. Given the relevance of the information about witness intimidation to Phillips's direct testimony, and the fact that the government had a good-faith basis to believe that the incidents in fact happened, the district court did not abuse its discretion in ruling that the testimony was probative, and that any probative value outweighed the prejudicial effect of the questions under Fed.R.Evid. 403.
 
 
 15
 Finally, Phillips stated at oral argument that he relied on the government's pre-trial motion that it would not bring out past instances of uncharged criminal conduct during cross-examination. Phillips did not brief this issue on appeal and failed to object to the cross-examination on this ground below. To the extent that the argument has not been waived it is without merit. There is no requirement that the government notify a defendant in advance about the potential subjects of cross-examination under Rule 608(b), and if a defendant relies on a government's statement of anticipated trial strategy, he does so at his own peril.
 
 B.
 
 16
 The court next addresses Phillips's argument that the district court erred in admitting the testimony of Veingro Hutchinson, who testified that Phillips told him that Turbeville should stop "singing like a bird" or else somebody would be "liable to kill him." (J.A. 112.) The government offered Hutchinson's testimony during its rebuttal, after Phillips had denied the incidents of witness intimidation under cross-examination. Since Phillips did not object to the admission of this testimony, we review for plain error. Fed.R.Crim.P. 52(b). We find none.
 
 
 17
 The authority of an appellate court to correct errors under Rule 52(b) is limited to errors that are clear or obvious and which affect substantial rights. United States v. Rhodes, 32 F.3d 867, 871 (4th Cir.1994) (citing United States v. Olano, 113 S.Ct. 1770, 1776 (1993)). Phillips's argument that the evidence was clearly inadmissible extrinsic evidence under Rule 608(b) fails. Extrinsic evidence of past bad acts inadmissible under Rule 608(b) may nonetheless be admissible under Rule 404(b) if offered for a purpose other than to prove bad character or propensity to commit a crime, despite the fact that the evidence comes in after a defendant has denied the conduct under cross-examination. United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 530 (4th Cir.1985). Evidence of witness intimidation is admissible to prove consciousness of guilt under Fed.R.Evid. 404(b), where the evidence is related to the offense charged and is reliable. United States v. Billups, 692 F.2d 320, 330 (4th Cir.1982). Accordingly, it was not error for the district court to admit Hutchinson's testimony in the government's rebuttal.
 
 C.
 
 18
 Phillips argues next that the district court abused its discretion by permitting the two sons of James Turbeville to testify on behalf of the government, even though their names were not included on the wit ness list provided to the defense pursuant to the government's "open file" policy. We cannot agree.
 
 
 19
 The court begins from the proposition that there is no legal duty for the government to turn over witness lists in advance of trial in noncapital cases. See 18 U.S.C. Secs. 3432 and 3500; Fed.R.Crim.P. 16(a)(2). Where the government chooses to provide the defendant with a witness list voluntarily, the district court still retains the discretion to admit the testimony of witnesses who are not on the list. See United States v. Reis, 788 F.2d 54, 58 (1st Cir.1986); United States v. House, 939 F.2d 659, 663 (8th Cir.1991).
 
 
 20
 The record reveals that the Turbeville sons approached the government after their father had testified during the first day of trial. There is no evidence that the government planned on calling these witnesses and intentionally withheld their names from the defense. Once the government learned that the sons were willing to corroborate their father's story about harvesting marijuana on Phillips's property, the government notified the court. The district court allowed the sons to testify only after providing the defense with time to interview them. Given the relevance of the witnesses' testimony, the lack of prior knowledge on the part of the government, and the opportunity provided to the defense to interview the witnesses, it was not an abuse of discretion to allow them to testify.
 
 D.
 
 21
 Finally, the court addresses Phillips's argument that the district court erred in attributing 200 ungerminated marijuana plants to him at sentencing. The plants either died or were destroyed, and Phillips's theory is that since they achieved no root formation they are not "plants" within the meaning of the Sentencing Guidelines and cannot properly be added to the drug weight attributed to him. See U.S.S.G. Sec. 2D1.1; United States v. Burke, 999 F.2d 596 (1st Cir.1993) (root formation required). We disagree.
 
 
 22
 The commentary to Sec. 2D1.1 of the Sentencing Guidelines provides that if an offense involves fifty or more marijuana plants, each plant shall be treated for sentencing purposes as the equivalent of one kilogram of marijuana. U.S.S.G. Sec. 2D1.1(c), comment. (backg'd.). In Burke the First Circuit adopted the view that "at the first sign of roots, a plant exists for sentencing purposes." 999 F.2d at 601. At the time of Phillips's sentencing the government could not produce any of the 200 plants in question, since they either had died or had been destroyed, and consequently the district court could not determine whether the plants ever met the technical definition of "plant" adopted in Burke and by other courts. See, e.g., United States v. Bechtol, 939 F.2d 603, 604 (8th Cir.1991) (a cutting with "root hairs" is a plant); United States v. Edge, 989 F.2d 871, 879 (6th Cir.1993) (marijuana cutting is a "plant" for sentencing purposes if there is "readily observable evidence of root formation"). Nonetheless, we determine that the district court properly counted the 200 "hills" planted by Dennis and his father-in-law as plants in calculating Phillips's base offense level.
 
 
 23
 In drug offenses, the commentary to Sec. 2D1.1(c) provides that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. Sec. 2D1.1(c), comment. (n.12.) The commentary further provides that "[i]f the offense involved both a substantive drug offense and an attempt or conspiracy ..., the total quantity involved shall be aggregated to determine the scale of the offense." Id. The Sentencing Guidelines treat one marijuana plant as equivalent to 100 grams of marijuana, where statutory penalties do not mandate that each plant be treated as equivalent to one kilogram of marijuana, precisely because "[i]n controlled substance offenses, an attempt is assigned the same offense level as the object of the attempt." U.S.S.G. Sec. 2D1.1(c), comment. (backg'd.).
 
 
 24
 Since an attempted sale of drugs establishes criminal liability for the amount attempted to be sold, and drugs that are destroyed before being seized may be attributable to a defendant if the amount destroyed can reasonably be estimated, the fact that the marijuana never grew or was destroyed does not relieve Phillips of criminal liability. The horticultural approach to the question urged by Phillips may have significance in some circumstances, but it does not help him here. If planting the 200-300 hills of marijuana was an attempt to produce 200 marijuana plants the plants can be attributable to Phillips. Phillips and his co-conspirators obviously did not intend to plant the seeds and watch the marijuana die. Rather, the evidence at trial revealed that Phillips agreed with Dennis that they would plant the marijuana on Phillips's property and later split the profits once they harvested and sold the plants, and that Dennis and his father-in-law took a substantial step in this direction by planting the seeds. Since planting the marijuana seeds was an attempt to grow marijuana plants, and Dennis planted the seeds pursuant to a scheme entered into with Phillips, the 200 "hills" establish Phillips's responsibility for 200 kilograms of marijuana. U.S.S.G. Sec. 2D1.1(c); 21 U.S.C. Sec. 841(b)(1)(A), (B), and (D).
 
 III.
 
 25
 For the reasons set forth above, the judgment of the district court is hereby affirmed.
 
 AFFIRMED
 
 26
 MOTZ, Circuit Judge, concurring in part and dissenting in part.
 
 
 27
 I agree with the majority's resolution of every issue in this case but the last. In my view, marijuana seeds, which have never germinated and so have never produced even a single marijuana plant, are not marijuana plants and cannot be marijuana "plants" for purposes of the Sentencing Guidelines. Therefore, I would not create a circuit conflict by holding that such ungerminated seeds constitute "plants" under the Guidelines. Accordingly, I respectfully dissent from Section II.D of the majority opinion.
 
 
 28
 The government has the burden of establishing the quantity of drugs attributable to a defendant for sentencing purposes by a preponderance of the evidence. United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir.1992). As the majority accurately states, the only evidence offered at the sentencing hearing to support the government's argument that the two hundred "hills" should be assessed against Phillips as two hundred marijuana "plants" is the testimony of Richard Dennis. However, according to Dennis, no marijuana plants ever grew from the seeds he and his father-in-law planted. Rather, as Dennis testified, when his father-in-law returned to check the progress of the marijuana seeds, "there was nothing there." This is not a case where there was evidence that marijuana plants were destroyed. Here, there is simply no evidence that there ever were any plants. Indeed, there is no evidence that even one of the two hundred hills ever sprouted a single leaf or developed a single root; the sole evidence was that seeds were planted in "hills" and the "hills" never became plants. No court has held that "hills" are to be considered as "plants" for Sentencing Guidelines purposes.
 
 
 29
 Although "plant" is not defined in the Sentencing Guidelines, the relevant guideline is explicit in requiring equivalency for "plants," not seeds or "hills." Thus, that guideline provides:
 
 
 30
 In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. Provided, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.
 
 
 31
 United States Sentencing Commission, Guidelines Manual Sec. 2D1.1(c) (1994) (emphasis added). "Plant" is used five separate times in a single sentence of the guideline; neither "hill" nor "seed" is mentioned even once.
 
 
 32
 Every circuit that has addressed this question has concluded that the key to determining whether a "plant" exists for federal sentencing purposes is whether there is evidence of root formation. See, e.g., United States v. Robinson, 35 F.3d 442, 446 (9th Cir.1994); United States v. Burke, 999 F.2d 596, 601 (1st Cir.1993) ("at the first sign of roots, a plant exists for sentencing purposes"); United States v. Edge, 989 F.2d 871, 879 (6th Cir.1993) (plant exists if there is "readily observable evidence of root formation"); United States v. Curtis, 965 F.2d 610, 616 (8th Cir.1992). If a marijuana cutting has some sort of root formation, it is considered a plant for purposes of U.S.S.G. Sec. 2D1.1. See Burke, 999 F.2d at 600; Curtis, 965 F.2d at 616. However, if it has no root formation, then it is not considered a plant for purposes of the guideline. See Robinson, 35 F.3d at 446; Edge, 989 F.2d at 879.
 
 
 33
 Like these courts, I believe this "common-sense approach" appropriate. Robinson, 35 F.3d at 446. Here the government offered no evidence that the seeds planted by Dennis and Wheeler ever took root. In fact, Dennis' testimony instead supports the conclusion that the seeds failed to germinate and, therefore, there was no root formation whatsoever. Because the government completely failed to demonstrate the existence of any root--or even any leaf or stalk--formation from the two hundred "hills" planted on Phillips' White Oak property, in my view, the district court should not have assessed these "hills" as "plants" under the Guidelines.
 
 
 34
 In concluding that the government did prove that the two hundred hills should be attributed to Phillips, the majority relies on the portion of the Guidelines commentary that states that "an attempt is assigned the same offense level as the object of the attempt" for controlled substance offenses. U.S.S.G. Sec. 2D1.1, comment (n.19). When this language in the commentary is placed in context, it seems to me that it offers little support for the conclusion that a "hill" is to be treated as a "plant." The relevant portion of the comment provides:
 
 
 35
 The decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana. In controlled substance offenses, an attempt is assigned the same offense level as the object of the attempt. Consequently, the Commission adopted the policy that, in the case of fewer than fifty marihuana plants, each plant is to be treated as the equivalent of an attempt to produce 100 grams of marihuana, except where the actual weight of the usable marihuana is greater.
 
 
 36
 Id. (emphasis added). Thus, the underscored middle sentence, upon which the majority relies, is immediately preceded by an explanation that the equivalence formula is "premised" on the "average yield" of a "mature marihuana plant." Id. (emphasis added). This strongly suggests that the "attempt" language in the commentary is simply making it clear that immature plants, or those with roots but no harvestable marijuana, still constitute "plants" for purposes of the guideline. This conclusion is confirmed by the sentence that follows the attempt language in the commentary. That sentence once again deals with the dichotomy between mature and immature plants, i.e., requiring the equivalency unless "the actual weight of the usable marihuana is greater." Id. In sum, it seems to me that in order to invoke the "attempt" language in the commentary, there must be a "plant" of some sort. Accordingly, an immature or infertile plant would constitute an "attempt" to create a marijuana plant. But when, as here, there is no evidence of a plant--neither a leaf, a stalk, nor a root--then I do not see how a court can hold that there is evidence of an attempt. The two hundred "hills" are no more an attempt than are two hundred seeds.
 
 
 37
 Moreover, even if planting, or purchasing, a marijuana seed could be considered a "substantial step" in "manufacturing" marijuana so as to constitute an attempt to commit the substantive offense, I would find the Guidelines language on which the majority relies inconsistent with the term "plant" as employed in the Guidelines themselves and in 21 U.S.C. Sec. 841(b)(1)(A), (B), and (D), the statutory basis for the sentencing guidelines dealing with marijuana plants. To the extent that the commentary is inconsistent with the guideline itself and the statute, the rule of lenity requires that we construe the inconsistency in favor of a defendant. See Bifulco v. United States, 447 U.S. 381, 387 (1980) (principle of lenity applies to sentencing provisions as well as substantive criminal statutes); Lewis v. United States, 445 U.S. 55, 65 (1980).
 
 
 38
 For these reasons, I would hold that the district court erred in assessing the two hundred "hills" against Phillips as two hundred marijuana "plants" under the Sentencing Guidelines.