**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Toby C. PATTERSON, Defendant–Appellant.**

No. 00–30306.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2001.

Filed May 16, 2002.

---

Gerald R. Smith, Assistant Federal Public Defender, Spokane, WA, for defendant-appellant Toby C. Patterson.

Nancy C. Cook, Assistant United States Attorney, Coeur d'Alene, ID, for plaintiff-appellee United States of America.

Before NOONAN, TASHIMA and TALLMAN, Circuit Judges.

Opinion by Judge RICHARD C. TALLMAN; Concurrence by Judge NOONAN; Dissent by Judge TASHIMA.

## OPINION

RICHARD C. TALLMAN, Circuit Judge.

Toby C. Patterson appeals his conviction and 188 month sentence for manufacturing 100 or more marijuana plants in violation of 21 U.S.C. § 841. Patterson contends that the district court violated the double jeopardy clause by vacating his guilty plea after it had been accepted. Patterson further alleges that the district court erred in denying his motions to suppress and to exclude evidence regarding the number of marijuana plants, and in admitting expert testimony about the marijuana plants. Patterson claims that the district court erred when it failed to provide the jury with the option of basing its verdict on the weight of marijuana rather than on the number of plants. Patterson also argues that the evidence was insufficient to support the guilty verdict. Patterson urges us to hold that the career offender provisions of the Sentencing Guidelines and the mandatory minimum sentences of 21 U.S.C. § 841 violate the Eighth Amendment. Finally, Patterson asserts that the district court erred in denying his motion for a downward departure.

We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm Patterson's conviction and sentence on all grounds.

## I

Detective Sergeant George Gow received information from a citizen named Calvin Stevens about marijuana growing on property near Stevens' home in rural Bonner County, Idaho. Stevens told Gow that, while out for a walk, he noticed the strong smell of marijuana near a mobile home and saw pots of marijuana in a gated trailer on the property. Stevens informed Gow that he was familiar with the look and smell of marijuana since he had been "introduced to marijuana" in the Army. Stevens also stated that there was a humming noise coming from the trailer and that the trailer's windows seemed to be covered with plywood.

Stevens later met with Sergeant Gow and showed him the property at issue, although he did not actually take Gow onto the property. Sergeant Gow saw the trailer and heard the humming noise described by Stevens, a sound which Gow believed came from halogen grow lights that Gow had heard at other marijuana grow operations. After hearing Sergeant Gow's testimony regarding his own observations, which corroborated the information provided by Stevens, a state magistrate judge found probable cause to issue a search warrant for the property.

Sergeant Gow and three other officers went to the property to execute the search warrant. They entered the trailer and found a number of marijuana plants growing in boxes inside. They pulled some of the smaller plants out of the boxes to take as evidence and cut some of the larger stalks that they were unable to remove. The officers videotaped this five-hour search and ultimately seized a total of 278 marijuana plants.

Patterson was indicted in August 1999 on one count of knowingly and intentionally manufacturing 100 or more marijuana

plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). After initially entering a plea of not guilty, Patterson entered into a plea agreement on April 11, 2000, in which he agreed to plead guilty to manufacturing marijuana. The plea agreement stated that "the number of marijuana plants is in dispute, and the Defendant stipulates to no facts which relate to the number of marijuana plants." The Plea Agreement further provided that this issue "will be litigated at sentencing," which was scheduled for July 10, 2000. The Plea Agreement also provided that *the Court has not made any commitment relating to the appropriate sentence* in this case, *and is not bound by this agreement.*" (emphasis in original).

The district court carefully conducted the Rule 11 colloquy when the plea was taken on April 4, 2000. The court reviewed the written provisions of the agreement with the defendant on the record and clarified the sole remaining issue in contention:

> THE COURT: Now, as counsel has pointed out and stated here in open court, the number of plants is in dispute, and the Court is going to have to resolve that on the time of sentencing, based upon the evidence as presented; that is in accordance with your understanding?
>
> THE DEFENDANT: Yes, Your Honor.
>
> \* \* \* \* \* \*
>
> THE COURT: [I]t is your position and your understanding that the Court has not made any commitment relating to the appropriate sentence in this case and is not bound by the plea negotiations?
>
> THE DEFENDANT: Yes, I understand.
>
> THE COURT: Because the number of plants has not been determined, neither this Court nor counsel nor anyone else

could tell you what the sentence might be at this point?

> THE DEFENDANT: Yes, I understand that, Your Honor.
>
> THE COURT: It is my understanding that you do admit that you are responsible or guilty of manufacturing marijuana plants and that you are guilty of the elements of this particular charge as outlined by Mr. McHugh [the prosecutor], but that you remain silent or not admitting the number of marijuana plants; is that correct?
>
> THE DEFENDANT: That is correct, Your Honor.
>
> THE COURT: So again, other than not admitting to the number of marijuana plants, do you agree with the summary given by Mr. McHugh?
>
> THE DEFENDANT: Yes, I do, Your Honor.
>
> THE COURT: So you admit those facts and agree that those facts sustain each element of the charge with the exception of whether it be a class B, C or D felony, that will have to be determined once the Court determines the number of plants; right?
>
> THE DEFENDANT: Yes, sir.

Subsequently, on June 26, 2000, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the statutory maximum, must be submitted to a jury and proven beyond a reasonable doubt. Patterson filed various objections to the Pre Sentence Report ("PSR"). The government filed a response to Patterson's objections arguing, *inter alia,* that the guilty plea should be set aside as insufficient under *Apprendi* because Patterson was not informed of the number of marijuana plants at the time he pled guilty. At the July 10, 2000, hearing,

the district court agreed that the plea was invalid because the number of marijuana plants was not stipulated to by Patterson, nor found by a jury beyond a reasonable doubt. The court therefore vacated the guilty plea and scheduled a jury trial for September 2000.

Prior to trial, the district court denied Patterson's motions to suppress evidence, concluding that the search warrant was supported by probable cause. The court also denied Patterson's motion to exclude videotaped evidence regarding the number of plants, reasoning that Patterson was not unduly prejudiced by the police officers' failure to preserve the pots in which the plants grew. Finally, the court granted Patterson's unopposed motion to weigh the marijuana prior to trial.

The case proceeded to trial over Patterson's objection. The jury found Patterson guilty of manufacturing marijuana. It returned a Special Verdict announcing, "We find the Defendant, Toby C. Patterson, knowingly and intentionally manufactured the following quantity of marijuana: One-hundred (100) or more marijuana plants." The district court sentenced Patterson to a term of 188 months' imprisonment and five years' supervised release. Patterson timely appealed.

## II

▇▇▇ Patterson contends that because jeopardy attached when the court accepted his guilty plea, the double jeopardy clause was violated when the district court vacated his guilty plea and proceeded to trial. Double jeopardy claims are reviewed de novo. *See United States v. Byrne,* 203 F.3d 671, 673 (9th Cir.), *cert. denied,* 531 U.S. 1114, 121 S.Ct. 861, 148 L.Ed.2d 774 (2001). Whether the district court is required to enforce a plea agreement is a question of law we review de novo. *See United States v. Fagan,* 996 F.2d 1009,

1013 (9th Cir.1993). We conclude that because the court conditionally accepted Patterson's plea, jeopardy did not attach, and Patterson was not twice placed in jeopardy for the same offense.

### A

The plea agreement in the instant case provided that the parties did not agree on the sentence, that the court made no commitment about the sentence, and that it was not bound by the agreement. The agreement also stated that the number of marijuana plants would be litigated at sentencing and that Patterson was aware of the varying penalties under 21 U.S.C. § 841(b)(1) for different quantities of plants.

Rule 11(c) of the Federal Rules of Criminal Procedure requires that the district court determine that the defendant understands "the nature of the charge to which the plea is offered" before the court accepts a guilty plea. Fed.R.Crim.P. 11(c). During the thorough Rule 11 colloquy, the district judge told Patterson that if, "after considering the presentence report and any other evidence that it might have that something other than what was being recommended should be imposed, the Court can do that." The court further stated that it had "not made any commitment relating to the appropriate sentence in this case and is not bound by the plea negotiations." After finding that the plea was knowing and voluntary, and that there was a factual basis for each of the elements of the offense, the court accepted the plea, set the date for sentencing, and told Patterson about the PSR that was to be prepared. Finally, the court reminded Patterson that it would "take everything into consideration right up to the day of sentencing."

Before Patterson's sentencing date arrived, the Supreme Court decided *Apprendi*. In light of this decision, the district court, on the government's motion, chose to vacate defendant's plea and gave him the option of either negotiating a new plea agreement or going to trial. As the district court noted, all parties had proceeded on the assumption that the number of plants at issue did not have to be proven beyond a reasonable doubt before a jury and this assumption was no longer valid in light of *Apprendi*.

Based upon the original Indictment in this case, the terms of his Plea Agreement, and the defendant's colloquy with the court when he entered his plea of guilty, it is clear that Patterson was not twice placed in jeopardy for the same offense. Patterson was convicted only one time, by a jury, of the crime of manufacturing 100 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(b), punishable by 5 to 40 years' imprisonment. While the parties were understandably uncertain as to how they should proceed in light of *Apprendi*, the district court did not err in vacating the plea and submitting the quantity issue to the jury as the Supreme Court now commands. At all times throughout this single prosecution Patterson faced the same crime, with the same potential penalties, for which he was ultimately tried by a jury, convicted, and sentenced.

The district court vacated Patterson's plea based upon the government's understandable post-*Apprendi* argument that Patterson had never pled to a third "element," the quantity of marijuana involved in his offense. But as we have now clarified, "*Apprendi* eschews the distinction between sentencing factors and elements of a crime: 'the relevant inquiry is one not of form, *but of effect*—does the required finding expose the defendant to a greater punishment than that authorized by the jury's

guilty verdict?'" *United States v. Buckland*, 277 F.3d 1173, 1180 (9th Cir.2002) (en banc) (emphasis in original) (citing *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348). The answer in regard to Patterson is plainly no.

Patterson's reliance on *United States v. Nordby*, 225 F.3d 1053 (9th Cir.2000), *overruled in part by Buckland*, 277 F.3d at 1182, is also unavailing. Patterson argues that since he only pled guilty to the manufacture of an unspecified amount of marijuana, the maximum sentence that he could have received under § 841 was five years. In *Nordby*, 225 F.3d at 1056, a panel of this court vacated and remanded a sentence where the issue of drug quantity, "a fact that increases the prescribed statutory maximum penalty to which a criminal defendant is exposed," had not been submitted to a jury and proven beyond a reasonable doubt. The court directed that, in light of *Apprendi*, Nordby's sentence could "not [] exceed the statutory maximum applicable to the facts as found by the jury beyond a reasonable doubt." *Id.*

Unlike the defendant in *Nordby*, Patterson's sentence did not exceed the "statutory maximum applicable to the facts found by the jury beyond a reasonable doubt." Patterson's conviction and sentence were not based on his conditional plea of guilty to an unspecified amount of marijuana. Rather, they were based on a finding by a jury that Patterson was guilty of manufacturing 100 or more marijuana plants. The issue of drug quantity was submitted to and decided by a jury beyond a reasonable doubt. Thus, Patterson's conviction and sentence fit squarely within the rule enunciated by the Supreme Court in *Apprendi*, acknowledged in *Nordby*, and recently, clarified by our en banc panel in *Buckland*. To the extent that *Nordby* relied on the distinction between sentencing factors and

elements in making its determination, it was overruled by *Buckland. See* 277 F.3d at 1182.

## B

■ While it is true that "[j]eopardy ordinarily attaches upon the court's acceptance of a plea agreement," *United States v. Smith,* 912 F.2d 322, 324.(9th Cir.1990), a guilty plea that is only conditionally accepted does not give rise to jeopardy. *See United States v. Cordova–Perez,* 65 F.3d 1552, 1557 (9th Cir.1995); *see also* 21 AM. JUR.2d *Criminal Law* § 337 (1998).

In *Cordova–Perez,* 65 F.3d at 1553, the defendant pled guilty to a lesser related offense in exchange for the government's promise to move for dismissal of other charges. The district court rejected the agreement after viewing the PSR on the basis that the agreement did not adequately reflect the seriousness of the defendant's offense behavior. *Id.* at 1554. We held that the district court's acceptance of the guilty plea was "impliedly contingent" upon its review of the PSR, and that the court therefore retained discretion to reject the plea based on information it subsequently learned from the PSR. *See id.* at 1555. We concluded that the district court's acceptance of the guilty plea was conditional and therefore rejected defendant's double jeopardy claim, since jeopardy did not attach upon "acceptance" of the conditional plea. *See id.* at 1557.

The district court's acceptance of Patterson's guilty plea here was likewise conditional. The district court told Patterson that if, "after considering the presentence report and any other evidence that it might have that something other than what was being recommended should be imposed, the Court can do that." The court retained discretion to reject the plea agreement on the basis of information it gained from either the PSR or on the basis of any other evidence that would indicate that the plea agreement was improper. In deciding that the plea agreement that had been entered into did not reflect the law as enunciated by the Supreme Court in *Apprendi,* the district court properly exercised its discretion.

At no time did anyone involved in these proceedings stipulate to the quantity that would determine the sentence Patterson ultimately faced. While it was true that everyone at entry of the plea expected the judge to make that factual determination at sentencing, we see no prejudice to Patterson in later having the jury do it since the law had changed in the interim. The possibility that the court might set aside the guilty plea because the governing law has changed "is a risk inherent in the bargain a defendant makes when he agrees to the court's conditional acceptance of his guilty plea. Here, that acceptance was conditional." *See Cordova–Perez,* 65 F.3d at 1556. Therefore, jeopardy did not attach upon the court's acceptance of the plea.[1]

---

1. The dissent claims that we are unable to justify why the government should be allowed to hold Patterson to the bargain when it is favorable to the government, but renege when it is not. However, these arguments rest on the dissent's mistaken assumption that Patterson pled guilty to growing an unspecified quantity of marijuana. That is not correct. Patterson agreed at all times that the sole contested issue of quantity was to be decided before the final sentence could be determined.

We fail to see how submitting that factual determination to a jury rather than the judge was less favorable to Patterson or more favorable to the government. The bargain never changed *vis-a-vis* either party to it. Only the identity of the decision-maker changed when the Supreme Court decided *Apprendi.* At all times, Patterson was at risk for a higher sentence if 100 or more plants were found to have been grown by him, regardless of wheth-

Further, while we have held that a district court is without authority to vacate an "unconditionally accepted" plea, *see United States v. Partida–Parra,* 859 F.2d 629, 631 (9th Cir.1988), the conditional nature of the court's acceptance of the guilty plea here distinguishes this case from *Partida–Parra. See also Cordova–Perez,* 65 F.3d at 1555 n. 5 (noting that conditional nature of court's acceptance of the plea distinguished Cordova–Perez's case from *Partida–Parra* ). Thus, the district court did not err in vacating Patterson's conditional plea in light of *Apprendi.*

"The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings." *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). That policy has not been offended in this case. Patterson has not been subjected to the harassment of successive prosecutions and there is no question of multiple trials or multiple punishments. Because the judge clearly stated that he was not bound by the plea agreement or plea negotiations, he had the right to vacate the plea in light of the change in the law of sentencing as to who would make the quantity determination and by what standard of proof as enunciated by the Supreme Court in *Apprendi.*[2]

■ The court's acceptance of Patterson's guilty plea was conditional and jeopardy did not attach. *See Cordova–Perez,* 65 F.3d at 1557; *United States v. Sanchez,* 609 F.2d 761, 763 (5th Cir.1980). Accordingly, there was no double jeopardy violation in this case. Vacating the plea in order to submit the quantity issue to the jury was not error.

### III

■ Patterson contends that the district court erred in denying his motion to suppress the evidence found as a result of the search because the search warrant was not supported by probable cause. We review the district court's denial of a motion to suppress evidence seized in a search de novo. *See United States v. Murillo,* 255 F.3d 1169, 1174 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1342, 152 L.Ed.2d 245 (2002). The factual findings underlying that decision are reviewed for clear error. *See id.* The magistrate judge's finding of probable cause is therefore reviewed for clear error and is accorded significant deference. *See United States v. Hay,* 231 F.3d 630, 634 n. 4 (9th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 135, 151 L.Ed.2d 88 (2001).

■ In determining whether probable cause supported the issuance of a search warrant in this case, we must determine whether there was a substantial basis for the magistrate's finding of probable cause. *See Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The

er this finding was made by the district judge or a jury.

**2.** Citing *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the dissent argues that Patterson's plea could not be withdrawn by the district court since it was voluntarily and "intelligently made in light of then applicable law." The problem with the dissent's argument in this regard is that it characterizes our decision as holding that the district court's action was proper

because Patterson's guilty plea was rendered involuntary as a result of an intervening change in the law. The dissent is correct that such a holding would arguably be foreclosed by the Court's decision in *Brady.* But, we hold that the district court's action was proper based on the conditional nature of Patterson's plea, a plea that assumed the judge would determine quantity for sentencing purposes. *Brady* is simply inapplicable to these unique facts.

magistrate's task is "to make a practical, common-sense decision," given the totality of the circumstances. *See id.* at 238, 103 S.Ct. 2317. The magistrate is entitled to rely upon the law enforcement officer's training and experience when evaluating the information related to him in the determination of probable cause. *See United States v. Gil,* 58 F.3d 1414, 1418 (9th Cir. 1995).

Patterson does not establish that the magistrate clearly erred in finding probable cause to issue the search warrant. On the contrary, the totality of the circumstances justified a finding of probable cause in this case.

Sergeant Gow testified that Stevens described a gutted trailer containing pots of marijuana, that Stevens saw and smelled marijuana on the property, and that Stevens heard a humming noise coming from the trailer. Sergeant Gow further testified that his own observations while at the property confirmed this information, including the smell of marijuana and the humming noise, which was similar to what Gow had heard at other marijuana operations.

Sergeant Gow also testified as to his own law enforcement experience. Gow stated that he had been assigned to the drug task force for eight years and that he had investigated numerous marijuana growing operations, including serving search warrants at over twenty-five such operations. As to Stevens' reliability, Sergeant Gow testified that he had known Stevens for eighteen years and that Stevens had been introduced to marijuana in the Army and was therefore familiar with the appearance and smell of marijuana.

■ Given the totality of the circumstances, and the significant deference attached to the magistrate's determination of probable cause, the magistrate did not clearly err in determining that Sergeant Gow's testimony was sufficient to support a finding of probable cause. *See id.* We therefore affirm the district court's denial of Patterson's motion to suppress.

## IV

Patterson contends that because the government destroyed the pots in which the marijuana grew, which he claims constituted the only evidence of whether the plants had roots, the district court erred in denying his motion to exclude evidence about the number of marijuana plants. Patterson further contends that the destruction of the evidence violated his "constitutional right of access to evidence" under the Due Process Clause. *See United States v. Belden,* 957 F.2d 671, 673 (9th Cir.1992).

■ We review for an abuse of discretion the district court's decision whether to exclude evidence as a sanction for destroying or failing to preserve evidence. *See id.* at 674. The district court's determination of whether the government's failure to preserve potentially exculpatory evidence violated a defendant's due process rights is reviewed de novo. *See United States v. Cooper,* 983 F.2d 928, 931 (9th Cir.1993).

### A

■ As an initial matter, Patterson contends that without the roots of the plants, there is no evidence of the number of plants, and so the only evidence of the amount of marijuana is its weight. Patterson's argument is based on the requirement that there must be "readily observable evidence of root formation" in order for a marijuana plant to be counted as a plant for sentencing purposes. *See United States v. Robinson,* 35 F.3d 442, 446 (9th Cir.1994). Patterson asserts that the de-

struction of the pots containing the roots has made it impossible to determine whether or not the plants had roots, and that, accordingly, there is no evidence of the number of marijuana plants. This assertion is erroneous.

██ Sergeant Gow testified that the plants that he counted did have roots. Gow further testified about his training and experience in differentiating between different stages of plant growth. He specifically stated that when he counted the plants in Patterson's operation he did not include any plants that he thought did not have roots. In addition, the video of the search also provides sufficient evidence of the number of marijuana plants found. Therefore, Patterson's claim is unpersuasive that the only proper evidence of the amount of marijuana in this case is its weight.

**B**

██ Patterson argues that because the roots of the plants were not preserved by the government, the district court erred in allowing the government to present other evidence about the number of marijuana plants. Factors to be considered in determining whether evidence should be excluded as a sanction for government destruction of, or failure to preserve, evidence are the quality of the government's conduct and the degree of prejudice to the defendant. *See Belden,* 957 F.2d at 674. The nature and degree of participation by the federal government and its attorneys in the loss or destruction of the evidence is also a consideration. *See id.*

██ In evaluating the quality of the government's conduct, the district court found that the police officers' decision not to preserve the roots of the plants did not constitute bad faith, but was instead based on their reasoning that the plants were clearly healthy and viable. The district court also found that Patterson was not unduly prejudiced by the destruction of the pots containing the roots because he had access to the video of the search and would have the opportunity to cross-examine the officers who counted the plants. *See id.* The court also noted that it was state not federal authorities who collected and stored the evidence. *See id.* Based on these facts, the district's court decision not to exclude evidence of the number of marijuana plants was not an abuse of discretion. The district court's denial of Patterson's motion to exclude is therefore affirmed.

**C**

██ Patterson also contends that the government's failure to preserve the roots violated his due process rights. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *United States v. Rambo,* 74 F.3d 948, 954 (9th Cir.1996).

██ Patterson has neither argued nor presented any evidence that the officers acted in bad faith in failing to preserve the roots. "Indeed, he does not even challenge the district court's finding that the government did not act in bad faith" in not preserving the roots. *United States v. Hernandez,* 109 F.3d 1450, 1455 (9th Cir. 1997). Patterson's due process claims can be rejected on this basis alone. *See Youngblood,* 488 U.S. at 58, 109 S.Ct. 333 (holding that failure to preserve potentially useful evidence does not violate due process absent a showing of bad faith); *Hernandez,* 109 F.3d at 1455 (finding no due process violation where there was no evidence of bad faith); *Rambo,* 74 F.3d at 954

(rejecting due process claim because deputies' conduct indicated "only poor judgment, not bad faith").

■ Even if Patterson could demonstrate bad faith, in order for the due process clause to be implicated, the evidence that was lost "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Hernandez,* 109 F.3d at 1455. Patterson has not shown that the evidence at issue satisfies either of these conditions.

## V

Patterson argues that the district court erred in admitting expert testimony by a horticulturalist, Professor Danny L. Barney, regarding whether the plants he saw in the police video had root formations. Patterson argues that whether the video showed roots on the marijuana plants is a jury determination. Patterson also contends that Barney was not qualified as an expert on marijuana.

■ We review the district court's decision to admit expert testimony for an abuse of discretion. *See United States v. Alatorre,* 222 F.3d 1098, 1100 (9th Cir. 2000); *United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir.), *cert. denied,* 530 U.S. 1268, 120 S.Ct. 2733, 147 L.Ed.2d 995 (2000). Because the district court is given broad discretion in deciding whether to admit expert testimony, its ruling may be reversed only if "manifestly erroneous." *Hankey,* 203 F.3d at 1167 (internal quotations omitted).

## A

The government called Professor Barney, a "plant physiologist" who described himself as having worked extensively with plant propagation, to testify about whether the marijuana plants seen in the police video had root systems and thus were "established plants ... capable of independent survival." Barney testified that, although he had never worked with marijuana plants, developmental characteristics such as size, wilting, discoloration, or new shoot growth, were common to many plants. Barney told the jury that all but one of the plants that he saw Sergeant Gow cutting and counting on the video had root systems.

The district court concluded that Professor Barney's testimony could assist the jury in determining whether the plants were actually plants or merely cuttings. The court further stated that, although Barney had no experience with marijuana plants, he did testify about the common characteristics of plants. Reasoning that Barney's experience went to the weight to be given his testimony rather than to its admissibility, the court decided that it would be for the jury to decide whether Barney's testimony was credible.

## B

■ Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

"In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind Rule 702's 'broad

parameters of reliability, relevancy, and assistance to the trier of fact.'" *Sementilli v. Trinidad Corp.,* 155 F.3d 1130, 1134 (9th Cir.1998) (quoting *Desrosiers v. Flight Int'l of Fla.,* 156 F.3d 952, 960–61 (9th Cir.1998)).

The district court's decision to admit Professor Barney's testimony was not "manifestly erroneous," and did not constitute an abuse of discretion. *Hankey,* 203 F.3d at 1167. In *Robinson,* we adopted the rule that marijuana cuttings are not plants for sentencing purposes unless there is "readily observable evidence of root formation." 35 F.3d at 446 (internal quotations omitted). We noted that "requiring readily observable evidence of root formation is a common-sense approach that will prevent the costly and confusing battle of botanical experts which occurred in this case." *Id.* (internal quotations omitted). However, we did not hold that expert testimony regarding root formation is impermissible.

The testimony in *Robinson* likely focused on the issue of when a plant actually becomes a plant, an inquiry which would require a considerable amount of expert testimony. *See id.* Here, the issue before the jury was whether the marijuana plants seized actually had roots so as to be classified as "plants" for sentencing purposes. Whether a plant actually has roots, and thus meets the definition of a plant for sentencing purposes, is a question whose determination could be aided by expert botanical testimony such as that presented in this case.

Professor Barney testified that the plants that Sergeant Gow cut and counted most likely had root systems because they were healthy, vigorous, and did not show signs of "wilting such as you would see if you had simply taken a cutting and stuck in into the soil." He distinguished those from other plants seen in the video that he thought were cuttings, based on the lack of new growth and dead plant tissue. Barney gave his opinion as to whether the plants had roots, but he also described for the jury the plant characteristics that helped him make that determination. This information about plant growth was relevant and helpful to the ultimate question before the jury, which was free to accept or reject his ultimate conclusion. *See* Fed. R.Evid. 704(a) ("testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact").

■ The district court did not manifestly err in concluding that this type of information would assist the jury in determining the number of plants for sentencing purposes, and therefore did not abuse its discretion in admitting the testimony. It properly exercised its "gatekeeping" function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

## VI

■ Patterson contends that the district court erred in failing to instruct the jury that it had the option of basing its verdict on the weight of the marijuana, rather than on the number of plants, and in failing to include that option on the verdict form. Jury instructions are reviewed as a whole to determine whether they are misleading or inadequate to guide the jury's deliberation. *See United States v. Dixon,* 201 F.3d 1223, 1230 (9th Cir. 2000). Whether the instructions adequately presented the defendant's theory of the case is reviewed de novo, but if the instructions fairly and adequately covered the elements of the offense, we review the instructions' "precise formulation" for an abuse of discretion. *Id.* (internal quotations omitted). Whether a jury instruction mis-

states the elements of a statutory crime is reviewed de novo. *See Vallejo,* 237 F.3d at 1024. The district court's decision to use a special verdict form over a defendant's objection is reviewed for an abuse of discretion. *See United States v. Reed,* 147 F.3d 1178, 1180 (9th Cir.1998).

Patterson stipulated to "knowingly and intentionally manufactur[ing] marijuana." When a defendant's offense involves the growing of marijuana, the drug quantity is determined using the equivalency ratio in § 2D1.1 of the United States Sentencing Guidelines, which is based on the number of plants.[3] *See United States v. Wegner,* 46 F.3d 924, 928 (9th Cir.1995) (stating that "[w]hen sufficient evidence establishes that defendant actually grew and was in possession of live plants, then conviction and sentencing can be based on evidence of live plants"). The drug quantity is based on the number of plants regardless of whether the plants were actually seized or not. *See id.* at 926–28. Patterson's offense involved marijuana plants, not harvested marijuana; he was therefore properly sentenced according to the number of plants rather than the weight of the marijuana.

■■■■ Although the district court declined to present Patterson's theory of the case to the jury, no authority supports his claim that he should be sentenced according to the weight of the marijuana, rather than the number of plants. *See United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990) (holding that a defendant is only entitled to a jury instruction on his theory of defense if his theory is supported by the law and has some foundation in the evidence). The district court's jury instruction correctly directed the jury to deter-

mine the number of plants attributable to Patterson, rather than the weight. Its decision not to give them the option of considering weight on the special verdict form did not constitute an abuse of discretion and is therefore affirmed.

### VII

■■■■ Patterson contends that because there was no reliable evidence that any plants existed, the evidence was insufficient to support the verdict. There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.), *cert. denied,* 531 U.S. 969, 121 S.Ct. 406, 148 L.Ed.2d 313 (2000).

The police video of the search and Sergeant Gow's testimony constitute sufficient evidence for a rational jury to find that Patterson grew marijuana plants, and that they were plants with root systems. Patterson's claim that there was insufficient evidence to support the verdict has no merit.

### VIII

■■■■ Patterson argues that the career offender provisions of § 4B1.1 of the United States Sentencing Guidelines and the mandatory minimum sentencing provisions of 21 U.S.C. § 841 violate due process, equal protection, and the Eighth Amendment. Patterson further contends that the disparity between the treatment of marijuana manufacturers and those who merely possess or distribute marijuana is

---

**3.** The commentary to § 2D1.1 of the Sentencing Guidelines states that "[f]or marihuana plants, the Commission has adopted the equivalency of 100 grams per plant, or the actual weight of the usable marihuana, whichever is greater." U.S.S.G. § 2D1.1, cmt. background.

arbitrary, and that the equivalency ratio, requiring him to be sentenced according to the number of marijuana plants, is irrational. The constitutionality of a sentence is reviewed de novo. *See United States v. Reyes–Pacheco,* 248 F.3d 942, 945 (9th Cir. 2001).

■■■■ In determining whether a sentence violates the Eighth Amendment, we must accord "substantial deference" to legislative determinations of appropriate punishments. *See Harmelin v. Michigan,* 501 U.S. 957, 998–99, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (citing *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). Although the Eighth Amendment does not require "strict proportionality between crime and sentence," it "forbids ... extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680 (citing *Solem,* 463 U.S. at 288, 303, 103 S.Ct. 3001).

## A

■■■■ Patterson contends that application of the career offender provisions of § 4B1.1 of the Sentencing Guidelines to his case,[4] resulting in an increased sentencing range, violates due process, equal protection, and the Eighth Amendment.

In *United States v. Carr,* 56 F.3d 38, 39 (9th Cir.1995), the defendant claimed that application of § 4B1.1 resulted in a sentence grossly disproportionate to the seriousness of his prior offenses, thus violating the Eighth Amendment and the Due Process Clause. Carr was convicted of possession with intent to distribute 66.92 grams of cocaine base. Because of two prior felony controlled substance convictions, Carr's sentence was enhanced pursuant to § 4B1.1 to 262 months. Since the defendant's sentence was less severe relative to his offenses than other sentences upheld by the Supreme Court, we held that an Eighth Amendment challenge to his sentence was foreclosed by Supreme Court precedent. *See id.* Further, we rejected the defendant's contention that § 4B1.1 violates due process. *See id.*

■■■■ Patterson's claim that application of the career offender provisions of § 4B1.1 in his case resulted in an arbitrary and disproportionate sentence must likewise be rejected. "Generally, as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds." *United States v. Parker,* 241 F.3d 1114, 1117 (9th Cir.2001).

■■■■ Nevertheless, we evaluate the constitutionality of the sentence under the Eighth Amendment by considering three factors: (1) the gravity of the offense and harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *See Solem,* 463 U.S. at 292, 103 S.Ct. 3001. Under the circumstances

---

4. Section 4B1.1 provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense ... A career offender's criminal history category in every case shall be Category VI.

Patterson had prior convictions for at least two felony crimes of violence and one controlled substance offense. Further, the offense at issue in this conviction, manufacturing marijuana, is a felony controlled substance offense committed by Patterson when he was 18 years or older. Thus, Patterson is a career offender under the Guidelines.

of this case, we cannot say that Patterson's sentence was "so disproportionate to the gravity of his offenses as to violate the Eighth Amendment." *Carr,* 56 F.3d at 39.

Patterson was sentenced to 188 months' imprisonment for manufacturing 100 or more marijuana plants, the minimum of his sentencing guideline range of 188 to 235 months. Further, the 188–month sentence was well within the statutory maximum applicable to him, 40 years. *See* 21 U.S.C. § 841(b)(1)(B). Considering the gravity of the offense in this case, manufacturing 100 or more marijuana plants, and the fact that the penalty imposed was both at the minimum of the Guideline range and well below the statutory maximum, we cannot say that Patterson's sentence was "grossly disproportionate" to his crime.

Further, for crimes "classified and classifiable as felonies[,] ... the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Harmelin,* 501 U.S. at 998, 111 S.Ct. 2680 (noting that sentencing laws involve "substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts") (internal quotations omitted). There is no reason why the legislature's determination of sentences for felonies committed by career offenders should be accorded less deference here where the sentence is not grossly disproportionate to the crime.

We also reject Patterson's due process challenge to § 4B1.1. This court has repeatedly determined that the Guidelines do not unduly limit the sentencing court's discretion to individualize a defendant's sentence, and thus do not violate substantive or procedural due process. *See, e.g., United States v. Brady,* 895 F.2d 538 (9th Cir.1990); *United States v. Jones,* 907 F.2d 929, 930 (9th Cir.1990); *Carr,* 56 F.3d

at 39. Section 4B1.1 does not operate in contravention of due process either on its face or as applied in this case. *See Carr,* 56 F.3d at 39.

**B**

In rejecting Eighth Amendment claims regarding mandatory consecutive minimum sentences imposed under 18 U.S.C. § 924(c), we have stated that "[g]enerally, as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds." *Parker,* 241 F.3d at 1117. Patterson's sentence is within the statutory limits of § 841, whose mandatory minimum sentences have long been upheld against Eighth Amendment challenges. *See, e.g., United States v. Kidder,* 869 F.2d 1328, 1334–34 (9th Cir.1989). Moreover, Patterson's sentence was not so "grossly disproportionate" to the crime so as to violate the Eighth Amendment. *See Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680.

**C**

Patterson's challenges to the disparity between sentences for marijuana growers and marijuana distributors and to the equivalency ratio have also been rejected by this court. *See Belden,* 957 F.2d at 676 (reasoning that § 2D1.1 is rationally based on the "recognition of a higher level of culpability for marijuana growers compared to those who merely possess the harvested product"); *see also Wegner,* 46 F.3d at 926 (addressing the pre–1995 version of the Guidelines, noting that Congress' intent with regard to § 2D1.1 was to "punish the manufacture of marijuana more severely"). Patterson's challenges under the Eighth Amendment are therefore without merit.

## IX

 Patterson contends that the district court did not adequately consider his motions for departure. Unless a district court's refusal to depart downward is based on its conclusion that it lacks the authority to depart, a district court's discretionary refusal to depart downward from the Sentencing Guidelines is not reviewable on appeal. *See United States v. Tam,* 240 F.3d 797, 805 (9th Cir.2001). Whether a district court has adequately stated the reasons for a sentence is a question of law and is reviewed de novo. *See United States v. Upshaw,* 918 F.2d 789, 792 (9th Cir.1990).

 The record in this case clearly indicates that the district court's refusal to depart from the Guidelines was not based on its conclusion that it lacked the authority to depart. Rather, it was based on its own investigation of Patterson's history as well as on the findings in the PSR, which the court adopted as its own. Thus, on appeal we may not review the district court's discretionary refusal to depart downward from the Guidelines.

## X

Patterson's conviction and sentence are AFFIRMED.

### NOONAN, Circuit Judge, concurring:

The Fifth Amendment to the Constitution of the United States provides, inter alia: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The policy perceptible beneath this provision is the unfairness of the government making a person risk punishment again for the same offense after he or she has stood trial or its equivalent and escaped punishment. *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The amendment also

protects against "a second prosecution for the same offense after conviction" and against "multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). It constitutes "'a constitutional policy of finality for the defendant's benefit.'" *Id.,* quoting *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

When Toby Patterson pleaded guilty to the crime of growing marijuana, he had not escaped punishment for growing 100 or more marijuana plants; rather, he was exposed to the risk that the court would so find; and the court presumably would have so found if a misreading of *Apprendi* had not led to rejection of the plea and a jury finding the number. Toby Patterson, therefore, was not twice put in jeopardy of his life, limbs, or any definite period of incarceration. He has not been subjected to a second prosecution nor punished multiple times for the same offense or deprived of any assurance of finality as to what his punishment would be. I, therefore, concur in his sentence and in the other parts of Judge Tallman's opinion.

### TASHIMA, Circuit Judge, dissenting:

I respectfully dissent. The district court conducted a thorough plea colloquy, satisfying the requirements of Fed. R.Crim.P. 11, and unconditionally accepted Patterson's plea of guilty. Jeopardy consequently attached. *See United States v. Wong,* 62 F.3d 1212, 1214 (9th Cir.1995) (citing *United States v. Smith,* 912 F.2d 322, 324 (9th Cir.1990), for the proposition that jeopardy attaches at the time the court accepts a guilty plea); *accord United States v. Aliotta,* 199 F.3d 78, 83 (2d Cir. 1999) (stating that jeopardy generally attaches when the district court accepts the defendant's guilty plea). Thus, the district

court did not have the authority to vacate the plea.

After finding that the plea was knowing and voluntary, and that there was a factual basis for each of the elements of the offense, the court accepted the plea, set the date for sentencing, and told Patterson about the Presentence Report ("PSR") that was going to be prepared. The court found

> that Mr. Patterson is fully cognizant and capable of entering an informed plea, he has been made aware of the nature of the offense and the elements that make up that charge, as well as what the Government's evidence would be to establish his guilt to this charge of manufacturing marijuana. The Court further finds that the plea of guilty has been entered knowingly and voluntarily, and by his admission of guilt, there is an independent basis in fact containing each of the essential elements of the offense.

> The Court, therefore, is going to accept the Defendant's plea of guilty and enter a judgment of guilt thereon.

The court then set the sentencing date and admonished Patterson to be truthful with the presentence investigator, reminding him that the court would "take everything into consideration right up to the day of sentencing." *Id.* at 20.

"The record demonstrates that the district court complied with Rule 11 in accepting" Patterson's plea. *United States v. Aguilar–Muniz,* 156 F.3d 974, 976 (9th Cir.1998). As required by Rule 11, and similar to *Aguilar–Muniz,* the court advised Patterson of the nature of the charges against him, the minimum and maximum penalties, and the rights Patterson was giving up. *See id.* at 976–77. The court also determined that there was a factual basis for the plea and that the plea was knowing and voluntary, not obtained by coercion or pressure. In all respects, therefore, the requirements of Rule 11 were satisfied, and the plea was validly accepted by the court. *Cf. id.* at 977 (finding a waiver of the right to appeal knowing and voluntary where the district court engaged in an "extended colloquy" with the defendant); *United States v. Grant,* 117 F.3d 788, 791 (5th Cir.1997) (rejecting the defendant's contention that he should be allowed to withdraw his guilty plea because "the district court meticulously satisfied its obligations under Rule 11"). The plea agreement made no sentencing recommendation, but this is not unusual and is specifically authorized by Rule 11(e)(1)(A). *See United States v. Fine,* 975 F.2d 596, 600 (9th Cir.1992) (en banc) (noting that the plea was pursuant to Rule 11(e)(1)(A), and that the government accordingly promised only to dismiss some counts, not to recommend a specific sentence); *United States v. Gilliam,* 255 F.3d 428, 431 (7th Cir.2001) (plea agreement noted minimum and maximum sentences, but noted that the final determination regarding the sentence would be determined by the court). The subsequent acceptance or rejection of the plea agreement does not invalidate the validly accepted plea. *See United States v. Hyde,* 520 U.S. 670, 674, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997) ("Guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time."); *United States v. Ewing,* 957 F.2d 115, 118 (4th Cir.1992) (noting that the flaw in the defendant's position was "its failure to acknowledge the distinction between a plea of guilty and a plea agreement").

" '[A] plea of guilty entered by one fully aware of the direct consequences ... must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or

unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes).'" *United States v. Kaczynski,* 239 F.3d 1108, 1114 (9th Cir.2001) (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)) (alteration in the original), *cert. denied,* —— U.S. ——, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002). In *Brady,* the Supreme Court rejected the defendant's contention that intervening caselaw rendered his guilty plea involuntary. The Court held that the plea was intelligent "because, although later judicial decisions indicated that at the time of his plea he 'did not correctly assess every relevant factor entering into his decision,' he was advised by competent counsel, was in control of his mental faculties, and 'was made aware of the nature of the charge against him.'" *Bousley v. United States,* 523 U.S. 614, 619, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting *Brady,* 397 U.S. at 756–57, 90 S.Ct. 1463) (citations omitted). In fact, "absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady,* 397 U.S. at 757, 90 S.Ct. 1463 (citation omitted). The fact that the defendant did not anticipate a subsequent judicial decision "d[id] not impugn the truth or reliability of his plea." *Id.*

In *United States v. Sanchez,* 269 F.3d 1250 (11th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1327, 152 L.Ed.2d 234 (2002), the Eleventh Circuit relied on *Brady* to reject the defendants' contention that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), invalidated their guilty pleas. *Id.* at 1285. The defendants had pled guilty to an indictment that did not contain a drug quantity. After *Apprendi* was decided, the defendants argued that the Rule 11 colloquy was insufficient because the district court did not inform them of all of the elements of the offense, and that their guilty pleas were induced by the threat of a harsher punishment than was permissible under the indictment. The court reasoned that, even though *Apprendi* reduced the maximum possible penalty the defendants faced, "there is 'no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that ... the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.'" *Id.* (quoting *Brady,* 397 U.S. at 757, 90 S.Ct. 1463) (alteration in the original). Their pleas therefore were still valid and the plea colloquies sufficient. *Id.*

As in *Sánchez,* Patterson's plea was voluntarily and "intelligently made in the light of the then applicable law." *Brady,* 397 U.S. at 757, 90 S.Ct. 1463. The majority does not explain why the government should be allowed to hold the defendant to the bargain when it is favorable to the government, but renege when it is not. *Cf. Gilliam,* 255 F.3d at 433–34 (affirming sentence much longer than anticipated by defense counsel because of criminal history, and reasoning that, had the defendant "at the moment he entered his plea, been unaware of the impact the Guidelines would have on his sentence, that lack of knowledge would not require the vacating of his plea"); *United States v. Ritsema,* 89 F.3d 392, 401 (7th Cir.1996) (noting that "defendants are rarely released from their agreements, despite the fact that the plea bargain has turned out not to be such a bargain after all"). To permit the government to withdraw from an unfavorable, but valid, plea is particularly troublesome be-

cause the rules do not even contemplate that the government can move to set aside a valid, accepted plea. *United States v. Partida–Parra*, 859 F.2d 629, 632 (9th Cir. 1988).

The majority's position rests solely on its assertion that Patterson's plea, although accepted by the court, was "conditionally" accepted and that jeopardy therefore did not attach.[1] This assertion can be accepted, however, only if one blinds oneself to the record. The district court could not have been clearer, firmer, or more direct when it unconditionally stated: "The Court, therefore, is going to accept the Defendant's plea of guilty and enter a judgment of guilt thereon." That the court retained its sentencing discretion does not make its acceptance of the plea "conditional." Sentencing necessarily cannot take place until after a plea (or verdict) of guilty is unconditionally accepted and, except in the case of a Rule 11(e)(1)(C) plea, a court fully retains its sentencing discretion *after* the plea is unconditionally accepted.[2] Here, unlike a Rule 11(e)(1)(C) plea agreement, the plea agreement expressly provided that *"the Court has not made any commitment relating to the appropriate sentence* in this case, *and is not bound by this agreement."* (Emphases in the original.) Thus, there is no factual basis in the record to support the majority's assertion that Patterson's plea was only "conditionally" accepted by the court.

Moreover, the only authority cited in support of the majority's "conditional" acceptance assertion is *United States v. Cordova–Perez*, 65 F.3d 1552 (9th Cir.1995). In *Cordova–Perez*, however, the district court rejected the agreement after viewing the PSR on the basis that the agreement did not reflect the seriousness of the defendant's offense behavior. *Id.* at 1554. By contrast, the district court here did not base its withdrawal of the plea on any matter disclosed by the PSR, but only on intervening caselaw.

The majority also ignores that the continued viability of *Cordova–Perez* has been called into question by *United States v. Hyde*, 124 F.3d 1033, 1034 (9th Cir.1997) (Ferguson, J., concurring), on the basis of the Supreme Court's reversal of our decision in *United States v. Hyde*, 92 F.3d 779 (9th Cir.1996). *See Hyde*, 520 U.S. 670, 117 S.Ct. 1630, 137 L.Ed.2d 935; *see also Froistad v. State*, 641 N.W.2d 86, 90 (N.D. 2002) (noting that *Cordova–Perez* is no longer good law as a result of the Supreme Court's decision in *Hyde* ). In fact, although the Supreme Court did not specifically address the viability of *Cordova–Perez* in *Hyde*, it did reject the defendant's proffered distinction between "fully accepted" and "conditionally accepted" guilty

---

1. The majority correctly rejects the government's contention that the plea was defective for failure to include drug quantity as an element of the offense. Maj. op. at 623 (citing *United States v. Buckland*, 277 F.3d 1173 (9th Cir.2002) (en banc)).

2. Thus, far from being "unique," Maj. op. at 625 n. 2, the facts of this case are typical. *See, e.g., Hyde*, 520 U.S. at 676–77, 117 S.Ct. 1630 (quoting advisory committee notes to Rule 32(e), stating that pleas are not to be viewed as "tentative, subject to withdrawal before sentence"); *United States v. Wallace* 276 F.3d 360, 363–64 (7th Cir.2002) (affirm-

ing the district court's denial of the defendant's motion to withdraw his guilty plea, where drug quantity was to be determined later by the district court); *Gilliam*, 255 F.3d at 431–33 (finding the guilty plea knowing and voluntary, even though the final determination of the sentence was to be made by the court later, and the sentence was much longer than predicted by the government and defense counsel); *United States v. Littlejohn*, 224 F.3d 960, 967 (9th Cir.2000) (noting that the PSR "is not prepared until one is necessary— after a defendant had pled guilty and been convicted").

pleas. *See Hyde,* 520 U.S. at 679, 117 S.Ct. 1630.

In *Hyde,* the Supreme Court reversed our conclusion that the defendant had an absolute right to withdraw his guilty plea before the district court accepted the plea agreement. *Id.* at 673, 117 S.Ct. 1630. The district court had accepted the guilty plea, but deferred decision on whether to accept the plea agreement until the PSR was prepared. Before sentencing, the defendant sought to withdraw his guilty plea, but the district court denied the motion for failure to provide a fair and just reason, pursuant to Fed.R.Crim.P. 32(e). The Supreme Court reasoned that, although it might be true that "[t]he guilty plea and the plea agreement are 'bound up together,'" *id.* at 677, 117 S.Ct. 1630 (quoting *Cordova–Perez,* 65 F.3d at 1556), the guilty plea can be accepted while the plea agreement is deferred, *id.* at 674, 117 S.Ct. 1630; "the Rules nowhere state that the guilty plea and the plea agreement must be treated identically," *id.* at 677, 117 S.Ct. 1630. The Court therefore held that, once a plea is accepted, even if the plea agreement is deferred, Rule 32(e)'s requirement that the defendant show a fair and just reason to withdraw the plea applies. *Id.* at 677–80, 117 S.Ct. 1630.

Although *Hyde* focused on the requirements of Rule 32(e), the import of its holding is clear—once the court has accepted a guilty plea, even if it has deferred acceptance of the plea agreement in order to review the PSR, the defendant may withdraw the plea only by showing a fair and just reason. If the defendant's ability to withdraw the plea is limited, *a fortiori,* the government's ability should be at least as limited, because the Rules do not even "contemplate[] government motions to set aside a plea." *Partida–Parra,* 859 F.2d at 632.

Not only is *Cordova–Perez*'s conclusion suspect because of *Hyde,* it is also inconsistent with our decision in *Partida–Parra.* In *Partida–Parra,* the government mistakenly permitted the defendant to plead guilty to a misdemeanor rather than a felony and subsequently moved to set aside the guilty plea, which had already been accepted by the district court. The district court granted the motion and set the case for jury trial. We noted, however, that "the district court's authority under the Rules to revisit an accepted guilty plea is limited." *Id.* The district court may vacate a plea if questions about the factual basis for the plea subsequently arise, if the defendant shows a fair and just reason, or if a fraud was committed upon the court. *Id.* at 631–33. The district court accordingly did not have authority under either the Federal Rules or under the "common law" of plea agreements to vacate the plea. *Id.* at 632 n. 3, 633–34; *see also United States v. Fagan,* 996 F.2d 1009, 1013 (9th Cir.1993) (asserting that, "once the district court accepts a guilty plea, absent fraud or breach of the plea agreement by the defendant, the court has no authority to vacate the guilty plea because of a government motion asserting 'that a mistake of fact (on [the government's] part) prevented the formation of a binding agreement'") (quoting *Partida–Parra,* 859 F.2d at 633) (alteration in the original); *cf. United States v. Fleming,* 239 F.3d 761, 764 (6th Cir.2001) ("When presented with a knowing and voluntary plea agreement, a district court's options are limited.... Further, once a court accepts a plea agreement, 'it is bound by the bargain.'") (quoting *United States v. Mandell,* 905 F.2d 970, 972 (6th Cir.1990)); *Aguilar–Muniz,* 156 F.3d at 978 (stating that, "[a]fter a plea agreement has been accepted and entered by the court, the court may not rescind the plea agreement on the government's motion unless the de-

fendant has breached the agreement"); *United States v. Kurkculer*, 918 F.2d 295, 301–02 (1st Cir.1990) (holding that the district court could not set aside a guilty plea over a defendant's objection upon the prosecution's breach of the agreement).

Similar to *Partida–Parra*, in *Ritsema*, the Seventh Circuit held that the district court had "exceeded its limited authority under Rule 11" when it withdrew its prior approval of a plea agreement based on its belief "that it had erred in deeming the count to which [the defendant] pled guilty adequately representative of his criminal conduct." 89 F.3d at 400, 402.

> Once the court has accepted a plea agreement, ... it is, as a general rule, bound by the terms of that agreement. There is no provision in the rules allowing a court to reject or modify an agreement once accepted. On the contrary, the principle that a plea agreement once accepted is binding is signaled by Rule 11 itself.

*Id.* at 399 (footnotes and citations omitted). Thus, the Rules of Criminal Procedure "do not grant the court the power to revisit a plea merely because at a later date the court has second thoughts about a bargain it has already approved." *Id.* at 401. Just as criminal defendants "are rarely released from their agreements" when a "plea bargain has turned out not to be such a bargain after all," neither should the government be permitted to do so. *Id.*

Patterson's plea was not defective, and the district court validly and unconditionally accepted the plea. Thus, as Patterson correctly contends, his guilty plea constituted a conviction for the lesser included offense of manufacturing an unspecified quantity of marijuana, and he could not subsequently be retried for the greater offense of manufacturing 100 or more marijuana plants.[3] *See Brown v. Ohio*, 432 U.S. 161, 167–70, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (holding that the double jeopardy clause prohibited prosecution for the greater offense of auto theft following the defendant's conviction for the lesser included offense of joy-riding); *Green v. United States*, 355 U.S. 184, 189–91, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (finding double jeopardy violated where defendant was retried on a first degree murder charge following reversal of his conviction by jury of a lesser included offense, second degree murder); *cf. United States v. Timbana*, 222 F.3d 688, 701–02 (9th Cir.) (rejecting the defendant's argument that his plea was not knowing and voluntary where he assured the court he voluntarily gave up his rights in order to enter a plea to a lesser offense than that charged in the indictment), *cert. denied*, 531 U.S. 1028, 121 S.Ct. 604, 148 L.Ed.2d 516 (2000).

Under *Partida–Parra*, the district court did not have the authority to withdraw the plea. Accordingly, Patterson's sentence should be vacated and the case remanded for resentencing based on the offense to which he pleaded guilty.

---

**3.** The statute that Patterson violated is 21 U.S.C. § 841(a). The offense that is the lesser offense is the violation of § 841(a) with no finding of quantity, subjecting Patterson to the sentencing provision of § 841(b)(1)(D), with its five-year maximum. The greater offense is the violation of § 841(a) with a finding of 100 or more plants, resulting in his sentence under § 841(b)(1)(B). "[I]t is clearly not the case that 'each [provision] requires proof of a fact which the other does not.'" *Brown*, 432 U.S. at 168, 97 S.Ct. 2221 (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). Rather, "[a]s is invariably true of a greater and lesser included offense, the lesser offense ... requires no proof beyond that which is required for conviction of the greater ... The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Id.*